(No. 3166—

HAROLD POBANZ, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed December 20, 1938.*

HARRY M. SCHRIVER, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

On December 17, 1937, claimant, by his then attorney, filed his claim averring that on the 11th day of October, 1937, he was employed by the Division of Highways of the Department of Public Works and Buildings of the State of Illinois, and was painting what is commonly known as the "West Como" bridge, which spans Elkhorn Creek, being part of S. B. I. Route No. Two, approximately four miles southwest of the City of Sterling, Illinois; that he was working on a ladder, and in some way the ladder slipped and the claimant fell to the ground, and as the result of the fall, he suffered a compression fracture of the first lumbar vertebra with complete severance of the spinal cord; fracture dislocation of the twelfth dorsal vertebra; complete paralysis of both legs; paralysis of the bladder and rectum and loss of sensation below the opproximate site of the injury.

The Attorney General concedes that the claimant will be completely and totally disabled.

All the facts were stipulated and the court finds that it has jurisdiction of the subject-matter and of the person.

An operation was performed as soon as claimant was removed to the hospital. Claimant was confined to the Public Hospital in Sterling from the date of the injury until the 18th day of October, 1937, and he was then removed by the State to St. Luke's Hospital in Chicago. He was treated by Dr. Henry Bascom Thomas of the Northwestern University Medical School, Professor of Hygiene and Physical Education, Medical Adviser, Armour Institute of Technology and Instructor in Orthopaedic Surgery; also a surgeon in the Cook County Hospital for ten years, probably one of the most renowned in his profession in the State of Illinois.

Claimant is about 22 or 23 years old and the operating physician did not expect him to live beyond four or five months. He has very serious injuries and it appears from the stipulation and the statements of the doctors, that he is a hopeless cripple.

At the time of claimant's injury, he was receiving Fifty Cents (50c) per hour, and working eight hours per day.

The bridge where claimant was working was part of a hard-surfaced public highway and the Supreme Court of this State, and this court have held that:

"The construction and maintenance of a hard surfaced paved public highway is the maintenance and construction of a structure under the Workmen's Compensation Act."

> City of Rock Island vs. Ind. Com., 287 Ill. 76, 79;
>
> Bond vs. State, 7 C. C. R. 198, 199;
>
> Pennington vs. State, 7 C. C. R. 253, 255.

The agreed statement of facts shows that the injuries arose out of and in the course of his employment. The evidence shows that the State had employed painters to do this kind of work between the first of April and they usually finished up along the first of November, depending somewhat upon weather conditions, but it does not appear that workmen, doing the kind of labor that claimant was doing, were employed 200 days of the year. The Workmen's Compensation Act provides that:

"As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of

300 as a basis for computing the annual earnings: *Provided,* the minimum number of days which shall be so used for the basis of the year's work shall be not less than 200."

The petitioner was unmarried. It appears that his injury is permanent and that he will not be able to do any kind of manual labor in the future.

Under Section 8 of the Compensation Act, in case of complete disability, compensation equal to fifty percentum of his earnings, but not less than $7.50 nor more than $15.00 per week, commencing on the day after the injury and continuing until the amount paid equals the amount which would have been payable as a death benefit under paragraph (a), Section 7, if the employee had died as a result of the injury thereof, leaving heirs surviving as provided in said paragraph (a), Section 7, and thereafter a pension during life annually, equal to 12 percentum and in other cases of total and permanent disability equal to 8 percentum of the amount which would have been payable as a death benefit if the employee had died as a result of the injury at the time thereof, leaving heirs surviving, as provided in said paragraph (a), Section 7. Such pension shall be paid monthly. Provided, any employee who receives an award under this paragraph and afterwards returns to work or is able to do so, and who earns or is able to earn as much as before the injury, payments under such award shall cease; if such employee returns to work, or is able to do so, and earns or is able to earn part but not as much as before the injury, such award shall be modified so as to conform to an award under paragraph (d) of this section: Provided, further, that if such award is terminated or reduced under the provisions of Section 8, such employee shall have the right at any time within one year after the date of such termination or reduction to file a petition with the commission for the purpose of determining whether any disability exists as a result of the original injury and the extent thereof; provided further, that disability as enumerated in Subdivision 18, Paragraph (e) of Section 8 shall be considered complete disability.

The claimant had not been in the employ of the State for a period of one year continuously preceding the injury, and it does not appear that there were any other persons who were so employed during such period of time in the same employment.

Claimant's compensation was Fifty Cents (50c) per hour, eight hours per day, or a total of Four Dollars ($4.00) per day. Figuring on a 200 day year, his annual compensation would be $800.00, and dividing said annual earning by the number of weeks in the year, or 52, makes an average weekly wage of $15.38, or a compensation rate of $7.69, since the claimant had no children under sixteen years of age at the time the injury occurred.

We, therefore, hold that claimant is entitled to an award equal to the death benefits as provided for under Paragraph (a) of Section 7, which provides for a death award of four times the annual earning. In this case that would be $3,200.00. It would, therefore, appear that the claimant is now entitled to compensation from the 12th day of October, 1937, to the 20th day of December, 1938, or sixty-two weeks, at the rate of $7.69 per week, or $476.78, leaving a balance of $2,723.22, which is payable at the rate of $7.69 per week until the full amount is paid and after the payment of such an award, a pension for life at the rate of 12% annually or $384.00 for the permanent loss of the use of both legs shall be paid to him at the rate of $32.00 per month.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," Approved July 3, 1937 (Sess. Laws 1927 p. 83), and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.